**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Reidhead, et al., | No. CV-12-00089-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 53). The Court now rules on the motion.

## I.    Background[1]

Plaintiffs filed this case against the State of Arizona and individual officers of the Arizona Department of Corrections (in their official capacities) following the death of Brenda Todd while an inmate in the Arizona State Prison Complex at Perryville. (Doc. 1). On January 14, 2011, Todd visited a prison nurse complaining of back pain, shoulder pain, and neck pain. (Doc. 56-10 at 3). Todd reported having numbness in her hands at night, a burning sensation in her neck, and muscle spasms. (*Id.*) The nurse referred Todd for a future visit with a doctor to "order x-rays." (*Id.*)

On January 20, 2011, Todd reported to another inmate that she was having trouble breathing. (Doc. 56-6 at 34). That evening, a pill nurse employed with the Arizona

---

[1] On a motion for summary judgment, the Court construes any disputed facts in the light most favorable to the non-moving party. *See Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

Department of Corrections dispensed medication to inmates in Todd's cell block. *See* (*id.* at 20). Todd informed the nurse that she was experiencing chest pain, left arm pain, numbness, tingling, pain in her neck, and throat constriction. (*Id.* at 14). The nurse told Todd to take "some 'IBU', drink water and lay down for a while." (*Id.*) (source paraphrasing the nurse's comments). One witness reported that Todd had been "begging" for help and that the nurse had said "There is nothing I can do for you[.] [P]ut in an HNR and go lay down." (*Id.* at 35). Upon Todd reporting that she had "already put in multiple HNRs," the nurse said, "We have no staff here, except at complex, there is nothing I can do." (*Id.*)

That night, inmates in cells near to Todd heard banging noises at approximately 23:00. (*Id.* at 21). One inmate informed Correctional Officer Coughlin (who was on duty from 17:00 to 21:55) that she had heard some kind of noise; Coughlin told this inmate that he would investigate; however, he heard no banging noises and did not observe anyone making noises. (*Id.*)

Another officer on duty that night, Corrections Officer Payne, was acting as a night guard. (*Id.* at 31). Payne had been informed that one of the inmates was having breathing problems but had not been told which inmate was in distress. (*Id.*) Payne conducted hourly security checks that night[2] and reported that Todd had been sleeping as of 23:00. (*Id.*) Payne reported that he last saw Todd at 04:00 when he conducted the last check of his shift and reported he saw her "[l]ying down." (*Id.* at 25). He first denied seeing Todd at 05:20 but then stated he had seen her at that time. (*Id.* at 25-26).

Corrections Officer Nelson began security checks at approximately 06:30 and observed Todd lying on her back with her head turned toward the wall and her legs draped over the edge of her bunk. (*Id.* at 14). Nelson attempted to contact Todd but believed she was sleeping and continued with her check. (*Id.*) When Nelson returned at 08:20 to conduct her next security check, she saw Todd lying in the same position. (*Id.*) Nelson entered the cell and discovered Todd was unresponsive. (*Id.* at 15). Todd was

---

[2] Regulations required security checks at half-hour intervals. (Doc. 56-6 at 23).

1  later pronounced dead. (*Id.*) When Todd was discovered, she was cold to the touch and

2  rigor mortis had set in. (*Id.* at 26). The responding doctor stated that Todd had been dead

3  for a "number of hours." (*Id.* at 28).

4      An autopsy revealed blockages of approximately 75% in three arteries of Todd's

5  heart. (*Id.*) The medical examiner concluded that Todd died as the result of sudden

6  cardiac death "due to the marked atherosclerotic occlusion of the left anterior descending

7  and right coronary arteries." (Doc. 56-5 at 2).

8      Plaintiffs, who include Todd's father, her estate, and her daughter, filed this

9  lawsuit alleging violations of 42 U.S.C. § 1983 and the Eighth Amendment for deliberate

10  indifference to medical needs and failure to observe and monitor medical conditions.

11  (Doc. 1 at 10). Plaintiffs also allege negligence and gross negligence against the State of

12  Arizona for breaching its duty to provide necessary medical care, violations of the

13  Arizona Constitution's protection of due process and prohibition against cruel and

14  unusual punishment, and liability for wrongful death. (*Id.* at 14-16).

15  **II.**    **Summary Judgment Standard**

16      Summary judgment is appropriate when "the movant shows that there is no

17  genuine dispute as to any material fact and the movant is entitled to judgment as a matter

18  of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely

19  disputed must support that assertion by . . . citing to particular parts of materials in the

20  record, including depositions, documents, electronically stored information, affidavits, or

21  declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by

22  "showing that materials cited do not establish the absence or presence of a genuine

23  dispute, or that an adverse party cannot produce admissible evidence to support the fact."

24  *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to

25  make a showing sufficient to establish the existence of an element essential to that party's

26  case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

27  *Catrett*, 477 U.S. 317, 322 (1986).

28      Initially, the movant bears the burden of pointing out to the Court the basis for the

1    motion and the elements of the causes of action upon which the non-movant will be

2    unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to

3    the non-movant to establish the existence of material fact. *Id.* The non-movant "must do

4    more than simply show that there is some metaphysical doubt as to the material facts" by

5    "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'"

6    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting

7    Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the

8    evidence is such that a reasonable jury could return a verdict for the non-moving party.

9    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare

10   assertions, standing alone, are insufficient to create a material issue of fact and defeat a

11   motion for summary judgment. *Id.* at 247–48. However, in the summary judgment

12   context, the Court construes all disputed facts in the light most favorable to the non-

13   moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

14   **III.    Admissibility of Plaintiffs' Evidence**

15        Defendants' primary argument is that they are entitled to summary judgment on all

16   claims because Plaintiffs have no admissible evidence from which a jury could find in

17   favor of Plaintiffs. (Doc. 53 at 3).

18        **A.    Legal Standard**

19        The Ninth Circuit Court of Appeals ("Ninth Circuit") applies a double standard to

20   the admissibility requirement for evidence at the summary judgment stage. *See* 10B

21   Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

22   Procedure § 2738 (3d. ed. 1998).

23        With respect to the non-movant's evidence offered in opposition to a motion for

24   summary judgment, the Ninth Circuit has stated that the proper inquiry is not "the

25   admissibility of the evidence's form" but rather only whether the *contents* of the evidence

26   are admissible. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also* Fed. R.

27   Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact

28   cannot be presented in a form that would be admissible in evidence."); *Celotex*, 477 U.S.

- 4 -

at 324 ("We do not mean that the *nonmoving party* must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." (emphasis added)). Accordingly, the Ninth Circuit has held, albeit sometimes implicitly, that a non-movant's hearsay evidence may establish a genuine issue of material fact precluding a grant of summary judgment. *See Fraser*, 342 F.3d at 1036-37; *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988). *But see Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 779 (9th Cir. 2002). Thus, "[m]aterial in a form not admissible in evidence may be used to *avoid*, but not to *obtain* summary judgment, except where an opponent bearing a burden of proof has failed to satisfy it when challenged after completion of relevant discovery." *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993).

### B.  Analysis

Defendants' deeply-flawed argument appears to rest on the premise that because Plaintiffs failed to take any depositions or conduct any discovery "except for gathering documents," Plaintiffs have no evidence admissible at trial. *See* (Doc. 53 at 3). This premise is wrong; the Federal Rules of Civil Procedure do not *require* a party to conduct discovery. *See, e.g.*, Fed. R. Civ. P. 30(a)(1) ("A party *may* . . . depose any person . . . .") (emphasis added); Fed. R. Civ. P. 33(a)(1) ("A party *may* serve on any other party . . . written interrogatories . . . .") (emphasis added); Fed. R. Civ. P. 34(a) ("A party *may* serve . . . a request . . . to produce . . . the following items . . . .") (emphasis added).

As one court has remarked, the purpose of discovery "is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998). In the present case, Plaintiffs apparently believe they have the evidence necessary to prevail at trial. They are not required to engage in superfluous discovery.

Plaintiffs have presented in opposition to Defendants' motion a cornucopia of evidence from which a reasonable juror could find in favor of Plaintiffs on their claims. *See* (Doc. 56) (Defendants' controverting statement of facts). The Court has summarized

some of this evidence in its preceding recitation of the facts of this case, and will not repeat it here. To the extent that this evidence consists of hearsay statements by inmates, prison officers, and the like, it is sufficient to survive summary judgment because Plaintiffs may convert it into an admissible form at trial by calling the declarants as witnesses.[3] *See Fraser*, 342 F.3d at 1036. Thus, Plaintiffs have shown evidence exists from which a reasonable juror could find in favor of Plaintiffs on their claims.

**IV.    Plaintiffs' Expert Witness**

Defendants alternatively argue that Plaintiffs cannot succeed on their claims because Plaintiffs do not have an expert witness qualified to testify to the standard of care of a pill nurse employed by the Arizona Department of Corrections. (Doc. 53 at 4). Although Plaintiffs have retained an expert witness, Defendants argue that his testimony is inadmissible. (*Id.*)

**A.    Dr. Desser**

Plaintiffs have disclosed the opinion of Dr. Kenneth B. Desser, a board-certified cardiologist, concerning the circumstances of Todd's death. *See* (Doc. 56-5). Dr. Desser opines that the symptoms Todd presented to the pill nurse were "classic for an acute coronary syndrome including unstable angina pectoris or an acute myocardial infarction" and 911 should have been called. (*Id.* at 2). He further opines as to the care Todd would have received in a hospital and to the likelihood of a successful result from the appropriate procedures. (*Id.* at 2-3).

**B.    Eighth Amendment Claim**

**1.    Legal Standard**

"Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious

---

[3] Defendants make the specious argument that "unsworn summaries of interviews and signed but unsworn statements of correctional officers" are, unlike deposition testimony, not admissible "to prove the truth of the matters described in those interviews and statements." (Doc. 57 at 5). But the investigative reports containing these statements may be used to impeach the declarants at trial to the same extent as if those statements were contained in a deposition. *See* Fed. R. Evid. 613(b) (concerning extrinsic evidence of a witness's prior inconsistent statement).

medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This is a two-part test. First, the plaintiff must show a "serious medical need" by "demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (citation and internal quotation marks omitted). Second, the plaintiff must show a deliberately indifferent response to the medical need either by showing "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Id.*

"Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (citation and internal quotation marks omitted). Although an inmate need not have suffered substantial harm to sustain a claim for deliberate indifference, the failure to provide adequate medical care must be more than simple negligence. *See id.* Deliberate indifference is not coextensive with medical malpractice. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Because the test for deliberate indifference includes a subjective component, it is different in nature from that of medical malpractice, which is an "objective inquiry that delves into reasonable standards of medical care." *Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997). The test for deliberate indifference "is more closely akin to criminal law than tort law," and does not "demand that the jury consider probing, complex questions concerning medical diagnosis and judgment." *Id.* Courts have concluded that expert testimony is not mandatory to prove a deliberate indifference claim; at least in some cases, a layperson can adequately understand the evidence such that expert testimony is not required. *See Sanders v. York*, 446 F. App'x 40, 43 (9th Cir. 2011) (deliberate indifference claim did not require expert testimony); *Gordon v. Washington*, 2010 WL 1406166, at *1-2 (W.D. Wash. Apr. 2, 2010) (unlike medical malpractice, expert testimony is not required to establish deliberate indifference claim); *see also Fleming v.*

1    *LeFevere*, 423 F. Supp. 2d 1064, 1070-71 (C.D. Cal. 2006) (expert testimony required
2    where the basis of deliberate indifference claim was inmate's disagreement with prison
3    doctor's evaluation of inmate as a "fairly poor candidate for treatment of Hepatitis C with
4    Interferon at this time").

5                    **2.    Analysis**

6            In this case, Plaintiffs' deliberate indifference claim does not concern the nuanced
7    details of a medical diagnosis. Rather, Plaintiffs claim Defendants demonstrated
8    deliberate indifference in failing to administer appropriate care in response to Todd's
9    complaints, failing to observe and monitor her after having notice of her symptoms,
10   failing to respond to her efforts to obtain help, and failing to adequately observe her when
11   she lay unmoving on her bed. *See* (Doc. 1 at 10). None of these allegations require expert
12   testimony because a layperson is capable of understanding their supporting evidence.

13           In *Ledford*, the plaintiff's deliberate indifference claim concerned prison officials'
14   deprivation of his prescription medication. 105 F.3d at 355-56. During this time, Ledford
15   alleged he experienced "nausea, dizziness, vomiting, a crawling sensation on his skin,
16   unspecified emotional and mental regression, and depression." *Id.* at 359. The Seventh
17   Circuit Court of Appeals concluded that plaintiff did not need an expert witness to prove
18   his case, commenting that "[t]he symptoms which Ledford exhibited were not beyond a
19   lay person's grasp. Most people are familiar with these experiences." *Id.* at 359-60.
20   Similarly, most people are familiar with the symptoms of a heart attack and there is no
21   evidence that a jury would require expert testimony to evaluate the pill nurse's response
22   to Todd's pleas for help. Defendants are not entitled to summary judgment on Plaintiffs'
23   deliberate indifference claim.[4]

24           **C.    State Claims**

25                   **1.    Legal Standard**

26           Arizona law requires that "[i]n an action alleging medical malpractice, a person
27   shall not give expert testimony on the appropriate standard of practice or care unless the

28   _____

             [4] Plantiffs' section 1983 claim against Defendant Ryan also survives.

1   person is licensed as a health professional in [the] state or another state" and also meets
2   other specified criteria. A.R.S. § 12-2604(A). Generally, the expert is required to be in
3   the same clinical practice in the same health profession as the defendant and, if the
4   defendant has a specialty, be in the same specialty. *See id.* The statute is intended to
5   ensure that physicians "testifying as experts have sufficient expertise to truly assist the
6   fact-finder on issues of standard of care and proximate causation." *Awsienko v. Cohen*,
7   257 P.3d 175, 178 ¶ 13 (Ariz. Ct. App. 2011).

8   **2.   Analysis**

9   With respect to Plaintiffs' state law claims for negligence, gross negligence, and
10  violations of the Arizona Constitution, Defendants are correct that Dr. Desser may not
11  opine as to the standard of care for a pill nurse employed by the Arizona Department of
12  Corrections.[5] *See* A.R.S. § 12-2604(A). However, to the extent Defendants assume this
13  case is about the medical negligence of a pill nurse, their argument fails. To survive
14  summary judgment, Plaintiffs need not show evidence from which a reasonable juror
15  could conclude that the pill nurse breached her standard of care *as a nurse*. Plaintiffs need
16  only show that Defendants were negligent in their duty to provide medical care. *See, e.g.*,
17  A.R.S. § 31-201.01(D). A reasonable juror could find such negligence occurred not only
18  by the pill nurse's failure to obtain medical aid for Todd, but also by the other prison
19  officers' failure to conduct required security checks, their failure to adequately
20  investigate the report of banging noises, their failure to adequately inform the on-duty
21  officers as to the identity of the inmate having breathing problems, the failure to timely
22  respond to Todd's prior requests for medical attention, and so forth. Thus, even an
23  inability to show negligence on the part of the pill nurse is not fatal to Plaintiffs' state law
24  claims.

---

26  [5] Although Defendants are correct on this point, they err in citing Federal Rule of
27  Evidence ("FRE") 702 as a basis for their argument. FRE 702 relates to the qualifications
    of a testifying expert witness, and Defendants have not disputed Dr. Desser's
    qualifications as a cardiologist. Instead, as the Court has discussed, A.R.S. § 12-2604
28  supplies the applicable restriction on expert testimony. This statute is substantive, not
    procedural, law. *See Seisinger v. Siebel*, 203 P.3d 483, 493 ¶ 39 (Ariz. 2009).

1       Moreover, Plaintiffs may show negligence on the part of the pill nurse even

2  without expert testimony as to a nurse's standard of care. Todd presented with the classic

3  symptoms of a heart attack that are widely known even among those with no formal

4  medical training. A reasonable juror could conclude that the nurse breached the standard

5  of care for even an ordinary prison employee lacking the specialized medical training of a

6  nurse. In other words, a reasonable juror could conclude that any prison employee

7  presented with Todd's symptoms had a duty to seek immediate medical help for Todd

8  and the nurse breached this duty. *Cf. Riedisser v. Nelson*, 534 P.2d 1052, 1054 (Ariz.

9  1975) ("Negligence on the part of a physician must be established by expert medical

10  testimony *unless the negligence is so grossly apparent that a layman would have no*

11  *difficulty in recognizing it*." (emphasis added)).

12       Consequently, Defendants are not entitled to summary judgment on Plaintiffs'

13  state law claims.[6]

14  **V.**    **Conclusion**

15       For the foregoing reasons,

16       **IT IS ORDERED** denying Defendants' Motion for Summary Judgment (Doc.

17  53).

18       Dated this 24th day of June, 2014.

19

20

21

22                          James A. Teilborg

                          Senior United States District Judge

23

24

25

26

---

27      [6] Separately, the Court notes that Dr. Desser's testimony is in any event admissible

28  to show causation because the causal link between failure to obtain medical treatment for Todd and her subsequent death is unrelated to the particulars of a pill nurse's standard of care.